**UNITED STATES of America, et al., EX. REL., James GARBE, Plaintiff,**

v.

**KMART CORPORATION, Defendant.**

Case No. 12–CV–0881–MJR–PMF

United States District Court, S.D. Illinois.

Filed September 18, 2013

Aaron M. Zigler, Robert L. King, Ste-
phen M. Tillery, Korein Tillery, St. Louis,

MO, George A. Zelcs, Korein Tillery, Chicago, IL, Gerald M. Burke, Assistant U.S. Attorney, Fairview Heights, IL, Erika A. Kelton, Phillips & Cohen LLP, Washington, DC, Larry P. Zoglin, Phillips and Cohen LLP, San Francisco, CA, for Plaintiffs.

John F. Farraher, Jeffrey W. Greene, Greenberg Traurig, LLP, Boston, MA, Adam Siegler, Greenberg Traurig LLP, Los Angeles, CA, John F. Gibbons, Kimberly M. Deshano, Greenberg Traurig, Chicago, IL, Robert P. Charrow, Greenberg Traurig, LLP, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

REAGAN, District Judge:

Pending before the Court is Defendant Kmart Corporation's Motion to Dismiss Relator's Complaint for failure to state a claim (Doc. 102). In the motion, Defendant Kmart Corporation ("Kmart") seeks to dismiss all 32 counts of the Second Amended Complaint ("SAC"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b). Plaintiff–Relator James Garbe has filed a brief in opposition (Doc. 106). For the reasons set forth below, this motion is **DENIED**.

Relator has brought *qui tam*[1] claims on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729(a)(1), § 3729(a)(2), § 3729(a)(7) (Count I) ("FCA") and the related false claims acts of twenty-six states (Counts II, IV–VIII, XI, XIII–XXXI), and four other related state statutes (Counts III, IX, X and XII).[2] The Second Amended Complaint (Doc. 98) alleges that Defendant Kmart violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1), (a)(2) and (a)(7), by misrepresenting its usual and customary drug prices on standardized claim forms and over-charging private insurers, prescription benefit managers, state Medicaid programs and certain federal programs for certain generic drugs sold at retail.[3]

### Relevant Legal Standards

### I. Pleading Standards

Defendant premises its motion upon Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b).

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Therefore, the objection presented by a Rule 12(b)(1) motion challenging the Court's subject matter jurisdiction is that the Court has no authority or competency to hear and decide the case before it. *International Union of Operating Engineers Local 150, AFL–CIO v. Ward,* 563 F.3d 276, 280–82 (7th Cir.2009). It is also "well settled that the failure to state a proper cause of action calls for a judgment on the

---

**1.** *Qui tam* is short for *qui tam pro domino rege quam pro se ipso in hac parte sequitur* ("who brings the action for the King as well as for himself."). *United States ex rel. Eunice Matthews v. Bank of Farmington,* 166 F.3d 853, 857 (7th Cir.1999).

**2.** The original Complaint and the First Amended Complaint were filed in the Central District of California. *See United States ex rel. Garbe v. Kmart Corp.,* No. 08–cv–4669 (C.D. Cal. Filed July 16, 2008). The case was then transferred to this Court on August 8, 2012 (*See* Doc. 1).

**3.** The United States has declined to intervene at this time (*See* Docs. 19, 20).

merits and not for a dismissal for want of jurisdiction." *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).[4]

In deciding a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6), the district court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir.2008), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court of Appeals for the Seventh Circuit has clarified that, even after *Twombly*, courts must still approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148, 130 S.Ct. 1141, 175 L.Ed.2d 973 (2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.2008)).

Legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to the presumption of truth afforded to well-pled facts. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir.2011). Therefore, after excising the allegations not accepted as true, the Court must decide whether the remaining factual allegations plausibly suggest entitlement to relief. *Id.* In other words, the complaint must contain allegations plausibly suggesting—not merely consistent with—an entitlement to relief. *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley*, 671 F.3d at 616 (citing *Ashcroft v. Iqbal*, 556 U.S.

662, 663–64, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Federal Rule of Civil Procedure 9(b) requires an elevated pleading standard for fraud claims, such as the claims asserted in this action. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) (emphasis added). *See also Tricontinental Industries, Ltd. v. Pricewaterhouse-Coopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). Rule 9 is aimed at: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions;' and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994). The Court of Appeals for the Seventh Circuit has explained that the complaint must plead "who, what, when, where, and how." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir.2012) (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 668 (7th Cir.2008)); *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 605 (7th Cir.2005). With that said, Rule 9(b) does not require a relator to plead evidence and is to be read in conjunction with Federal Rule of Civil Procedure 8, which requires a short and plain statement of the claim. *See Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975).

## II. The False Claims Act Standard

Under the federal FCA, "private individuals ... referred to as 'relators,' may file civil actions known as qui tam actions on behalf of the United States to recover money that the government paid as a result of conduct forbidden under [the False Claims] Act." *United States ex rel.*

**4.** The Court will not proceed under Rule 12(b)(1) for the reasons explained below.

*Yannacopoulos v. Gen. Dynamics,* 652 F.3d 818, 822 (7th Cir.2011) (citations omit-ted). "To establish civil liability under the False Claims Act ("FCA"), a relator gener-ally must prove (1) that the defendant made a statement in order to receive mon-ey from the government; (2) that the statement was false; and (3) that the de-fendant knew the statement was false." *Yannacopoulos,* 652 F.3d at 822 (citing *United States ex rel. Gross v. AIDS Re-search Alliance–Chicago,* 415 F.3d 601, 604 (7th Cir.2005)).

### Analysis

Kmart argues that Relator has failed to state a claim by (1) failing to identify a specific contract, statute or regulation that was breached or any other misrepresenta-tion that was made, (2) failing to allege the requisite "presentment" of the claim, and, (3) due to the fact that a public disclosure was made, failing to meet the jurisdictional prerequisite that Relator be the original source of his own allegations.

### I. Identification of a False State-ment

■ Kmart asserts that the SAC does not identify any statement that was false with regard to any contract, statute or regulation under Rule 9(b). Relator re-sponds that the SAC does allege false statements when he states in the SAC that Kmart submitted reimbursement claim forms containing false information regard-ing its "usual and customary" generic drug prices.

■ A *qui tam* plaintiff must allege that the defendant actually submitted a claim for payment to the government, and that the claim was knowingly false. *See United States ex rel. Fowler v. Caremark RX, L.L.C.,* 496 F.3d 730, 741–42 (7th Cir.2007) (specific evidence "at an individualized transaction level" is required to be plead-ed), overruled in part on other grounds by *Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 909–10 (7th Cir.2009); *Unit-ed States ex rel. Garst v. Lockheed–Martin Corp.,* 328 F.3d 374, 376 (7th Cir.2003) (Relator must "identify specific false claims for payment or specific false state-ments made in order to obtain payment").

Viewing Relators' SAC as a whole and drawing all reasonable inferences in his favor (as required by the Court on a Rule 12(b)(6) motion), the Court finds that the SAC sufficiently alleges a false claim. A review of the portions of the SAC cited by Relator–Paragraphs 144, 156 and 167(a)–(f) are specific examples of the false claims submitted. For example, Relator alleges that Kmart "consistently billed public and private insurers more for RMP drugs[5] than Kmart billed the cash-paying public. Moreover, in the field for the 'usual and customary' price on the claim forms, Kmart consistently reported a price that was higher than its true usual and custom-ary price, i.e., the RMP price offered to the general public." (Doc. 98, ¶ 156). Re-lator further explains that "Kmart's re-porting of false and inflated usual and customary prices on its claim form renders those claims false and fraudulent" (Doc. 98, ¶ 144). Relator alleges that Kmart was obligated to treat its RMP members as

---

5. "RMP" stands for "Retail Maintenance Pro-gram," which is Kmart's generic drug pricing program that Relator alleges to be at the center of Kmart's fraud scheme (*See* Doc. 98, ¶ 3). Specifically, this program allows cash-paying customers to purchase more than 300 widely-prescribed generic drugs for $5, $10 and $15 (or less) for 30, 60 and 90 day prescriptions (Doc. 98, ¶ 3). Any pharmacy patron is eligible to participate in the pro-gram so long as they pay cash for the drug (*See* Doc. 98, ¶ 5).

"[members of the] general public" and its RMP prices as the U & C [6] prices for those drugs. Instead, Kmart ignored RMP purchases when determining its U & C and its U & C, therefore, was higher than it ought to have been (Doc. 98, ¶ 42). Contrary to Defendant's assertions, the Court finds that Relator's claim that Kmart submitted to the government invoices that contain false information falls neatly within the FCA. *See U.S. v. Pecore,* 664 F.3d 1125, 1133 (7th Cir.2011) (**"the government had reasonable grounds for believing that the defendants knowingly submitted false invoices, and as such, the government's claim fit neatly into the FCA."**).

Kmart argues that Relator's allegations fail because they do not identify any contract or statute to establish falsity. Kmart cites to the Fifth Circuit case of *U.S. v. Southland Mgmt. Corp,* 326 F.3d 669, 674 (5th Cir.2003) for the proposition that "whether a claim is false depends *entirely* on the requirements set out in the underlying contract, regulation or statutory provision and whether Kmart's actions are inconsistent with such provisions." (Doc. 102, p. 5) (emphasis added). The Court, however, will not apply *Southland* in this instance, finding it to be distinguishable as Relator has not alleged any false express/implied certification theories of liability here. *See U.S. v. Southland Mgmt. Corp.,* 326 F.3d 669 (5th Cir.2003) ("The United States claims that the Owners violate the civil False Claims Act because 19 HAP vouchers they submitted between July 1995 and January 1997 falsely certified that the property was decent, safe, and sanitary"). Kmart even recognizes in its motion that Relator does *not* allege any express certification theory and "fairs no

better under an implied certification theory." (Doc. 102, p. 8).

Kmart also argues that Plaintiff has failed to plead his allegations with sufficient particularity under Rule 9(b). The summary of Relator's allegations makes clear that Relator has adequately described the content of the alleged false representations. Relator sets forth the details of more than twenty instances in which Kmart allegedly falsely overstated its cash price. Relator discovered this scheme through his own experience as a Medicare Part D beneficiary. Relator alleges that on September 22, 2007, Kmart filled a 90 day prescription for an RMP drug for which Kmart collected a $10 copayment from Relator (Doc. 98, ¶ 145). Relator expected that, after his $10 copayment, Kmart would claim a $15 charge (the same amount paid by the cash-paying public) to his Part D plan and seek reimbursement from that plain for the remaining $5. However, instead of billing the balance of the $15 RMP price to the Medicare Part D insurer, Kmart falsely reported a price of $60.84 and sought reimbursement of $50.84, essentially misrepresenting the "usual and customary" price (Doc. 98, ¶ 146).

Kmart's argument that Relator's allegations do not sufficiently plead fraud are not persuasive. The above cited allegations confirm that Relator has detailed the "who, what, when, where and how" of the "false claim." The Court concludes that Relator has pled his claims with sufficient particularity under Rule 9(b). Of course, "[t]o say that fraud has been pleaded with particularity is not to say that it has been proved," and therefore Relator's allegations could very well be wrong. *United States ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 853 (7th Cir.2009).

---

**6.** "U & C" connotes "usual and customary."

## II. Pleading that a claim was Presented to, Paid By, or Approved by the Federal Government

Kmart alleges that Relator failed to plead any specific instance of presentment or payment to the Government or concealment of a debt owed to the Government. Because Relator proceeds under three sections of the FCA: 31 U.S.C. § 3729(a)(1); § 3729(a)(2); § 3729(a)(7), the Court will analyze his claims under each section separately.[7]

### A. § 3729(a)(1)

Under § 3729(a)(1), the FCA expressly requires that Kmart has knowingly presented or caused to be presented the false claim for payment. 31 U.S.C. § 3729(a)(1)(A). "In this circuit, a relator does not need to have actually witnessed the 'specific request for payment' or to have had access to paperwork submitted to the government." *United States ex rel. Geschrey v. Generations Healthcare, L.L.C.,* 922 F.Supp.2d 695, 705 (N.D.Ill. 2012). "Without the presentment of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act." *United States ex rel. Clausen v. Lab. Corp., of Am., Inc.,* 290 F.3d 1301, 1311 (11th Cir.2002).

Relator alleges that Kmart misrepresented its usual and customary drug prices on claim forms and submitted these false claims to government health care plans, such as Medicare, Medicaid, and Tricare. Relator alleges (and Kmart concedes that it has been alleged) specific instances of payments made by federal healthcare programs such as Medicare Part D, Medicaid for Ohio, and Medicaid

---

**7.** Relator's SAC alleges that Kmart violated 31 U.S.C. § 3729(a)(1), § 3729(a)(2) and § 3729(a)(7). The Fraud Enforcement Recovery Act of 2009 ("FERA"), Pub. L. No. 111–21, § 386, 123 Stat. 1617 (2009) amended certain sections of the False Claims Act, including the sections at issue in this case. FERA was enacted on May 20, 2009, and provided that the amendments will be generally applicable only to conduct occurring *on or after* May 20, 2009, Pub. L. 111–21, § 4(f). *See Yannacopoulos,* 652 F.3d at 818 n. 2. The specific examples of alleged false records knowingly used the false claim to conceal the amounts it owed the Government spans the time period of September 27, 2007 through May 2, 2008. However, Relator contends in its SAC that the United States "continues to pay the claims that would not be paid but for defendant's unlawful conduct" and "continues to be damaged" by such fraudulent practices. It is also likely that the specific examples provided by Relator in the complaint are not meant to be exhaustive as they are merely coined as "examples" of the inflated claims for reimbursement. Accordingly, it is not clear to the Court whether the amended or earlier version of 31 U.S.C. § 3729 applies. There also appears to be a split of authority as to whether the word "claims" refers to the alleged false claims at issue in the litigation, or whether "claims" refers to the case or cause of action under the False Claims Act. *See Hopper v. Solvay Pharms., Inc.,* 588 F.3d 1318, 1327 n. 3 (11th Cir.2009) (construing FERA's "claims" language to mean the alleged false claims submitted to the government for payment); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1051 n. 1 (9th Cir.2011) (indicating that "claim" means a demand for payment); *cf United States ex rel. Westrick v. Second Chance Body Armor, Inc.,* 685 F.Supp.2d 129, 140 (D.D.C.2010) (applying FERA § 4(f)(1) to case pending as of June 7, 2008); *United States ex rel. Walner v. Northshore Univ. Healthsystem,* 660 F.Supp.2d 891, 895 n. 3 (N.D.Ill.2009) (same). This issue, raised briefly by Kmart in a footnote, was not addressed by Relator in its opposition brief, nor has Relator sought to clarify which version of the False Claims Act applies. The Court finds that the changes are not particularly significant to this action. Accordingly, for purposes of the pending motion to dismiss, this Court will not differentiate between the different versions of the False Claims Act.

MCO for Ohio. Specifically, Relator either states the amount that any of the programs reimbursed Kmart or that the claims for reimbursement were submitted to these programs (*See* Doc. 98, p. 51–55). For example, Relator asserts that "On November 5, 2007, Kmart submitted a claim to [Humana's Medicare Part D plan] seeking $57.94 in reimbursement for a 30–day prescription of 40 mg Lisinopril/HCTZ (an RMP drug)" and "Kmart received a $3.51 co-pay and was reimbursed $10.53 by Humana for total $14.04 reimbursement." (Doc. 98, p. 53). These examples detailing specific instances of payment constitute allegations that these claims were in fact "presented." [8]

Further, these examples allege that these claims were presented *to the Government. See United States ex rel. Ven-A–Care v. Actavis Mid Atl. LLC,* 659 F.Supp.2d 262, 269 (D.Mass.2009) ("[A] provider who submits a false Medicaid claim to the state presents a false claim for payment or approval to the United States."); *see also Nichols v. Omni H.C. Inc.,* No. 02–cv–66, 2008 WL 906425 at *4 (M.D.Ga. Mar. 31, 2008) ("claims that are submitted to Medicaid are claims to the federal government."); *see also United States v. Aguillon,* 628 F.Supp.2d 542, 547

(D.Del.2009) ("Medicare carriers are considered agents of the United States for the purposes of the FCA."); *see also* 42 C.F.R. 421.5(b) ("Intermediaries and carriers act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes."). Relator has set forth the funding structure of Medicare, Medicaid and Tricare as they relate to Kmart's reimbursement claims and PDE's that are presented for payment. The Court finds that Relator's allegations are sufficient to demonstrate that presentment to the Government was made pursuant to § 3729(a)(1).[9]

**B. § 3729(a)(2)**

■■■ Similarly, to plead a claim under § 3729(a)(2),[10] Relator must allege: "(1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false." *United States ex rel. Gross v. AIDS Research Alliance–Chi.,* 415 F.3d 601, 604 (7th Cir.2005). The Supreme Court has stated that "a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve

---

**8.** The Court recognizes that, in Relator's SAC, he only describes examples of actions that took place within Ohio. However, Relator also alleges that these actions were part of a corporate policy and thus took place in other states as well. In support, he explains that Kmart's billing practices were directed from its corporate office and it was a nationwide practice (Doc. 98, ¶ 170). The Court finds it reasonable to rely on such assertion because Relator also alleges that he was employed by Kmart from May 2007 until October 2010, and worked as a pharmacist at Kmart stores in Ohio and Michigan.

**9.** The Court finds Kmart's reliance on *United States ex rel. Totten v. Bombardier Corp.,* 380 F.3d 488 (D.C.Cir.2004) to demonstrate that there was no presentment here is misplaced,

as Medicaid is "based upon a comprehensive funding and reimbursement structure between the state and federal government [that] is different from the federal funding mechanism for Amtrak" considered in *Totten. United States of America v. Amerigroup Illinois, Inc.,* No. 02–C–6074, 2005 WL 2667207, at *2 (N.D.Ill. Oct. 17, 2005).

**10.** As previously explained, in 2009, Congress amended Section 3729(a)(2) and re-designated it as Section 3729(a)(1)(B). *See* History to 31 U.S.C. § 3729. This district has continued to apply this same § 3729(a)(2) three-element standard for § 3729(a)(1)(B) claims. *See United States ex rel. Dickson v. Bristol Myers Squibb Company,* 289 F.R.D. 271, 273 n. 3 (S.D.Ill.2013).

the false claim." *Allison Engine Co., Inc. v. United States ex rel. Sanders,* 553 U.S. 662, 128 S.Ct. 2123, 2130, 170 L.Ed.2d 1030 (2008).

■ Kmart argues that Relator has failed to state a claim under § 3729(a)(2) because Kmart's link to the government is attenuated by a series of private contracts and Relator has made no specific allegations that the federal Government paid or approved any claim submitted by Kmart.

As previously stated, the Court finds that Relator has sufficiently alleged that false claims were presented to the Government. Further, given the structure of the Medicaid, Medicare and Tricare systems, the natural and foreseeable consequence of submitting a false claim to any of them is that the United States will provide funds to pay the false claim. Relator's FAC sets forth the funding structures of these programs and alleges that Kmart knew that the false price representations would result in the Government making inflated reimbursements for claims submitted. (*See* Doc. 98, ¶ 154, 180).

The SAC also satisfies the requirement in *Allison Engine* that the "false statement be material to the claim." *Allison Engine,* 553 U.S. at 663, 128 S.Ct. 2123. The Supreme Court in *Allison Engine* stated that "a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Id.* at 673, 128 S.Ct. 2123, 2130. Under Seventh Circuit case law, a "statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it is addressed.'" *United States v.*

*Rogan,* 517 F.3d 449, 452 (7th Cir.2008) (citations omitted) (citing *Neder v. United States,* 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Relator here alleges that "[d]efendant knowingly made, used, or caused to be made or used false or fraudulent records and statements and omitted *material* facts, to get false and fraudulent claims paid or approved under Medicaid, Medicare, Tricare, and various other government health programs" (Doc. 98, ¶ 180). Further, it is obvious here that reporting false amounts would have a natural tendency to influence the Government's actions, by inflating the amount of its payment. Thus, Relator has sufficiently stated a claim under § 3729(a)(2).

**C. § 3729(a)(7)**

■ Regarding § 3729(a)(7) [11], Kmart asserts that this claim fails for the same reasons Relator's other claims fail. Section 3729(a)(7) imposes liability on any person who "knowingly makes, uses, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." As the Court explained above, Relator has sufficiently alleged that Kmart presented a false claim for generic prescription drug reimbursement to the Government, in which the Government paid Kmart for such a false claim, or in which Kmart used a false claim to conceal amounts it owed the Government.

Overall, the Court finds that the facts as pleaded support the inference that claims based on fraudulent amounts were submitted to the government. Relator alleges specific examples, which include dates as well as amounts charged. The Court finds that Relator has made the alleged fraud in

**11.** Pursuant to the May 20, 2009 amendment, § 3729(a)(7) was recodified as § 3729(a)(1)(G). Pub. L. 111–21, 123 Stat. 1621; *see also United States ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 855 n. * (7th Cir.2009).

the claim submitting process sufficiently clear to allow Kmart to respond to the allegations. Thus, Relator has stated a claim under § 3729(a)(1), § 3729(a)(2) and § 3729(a)(7).

### III. Public Disclosure

 Kmart asserts that the Court lacks subject matter jurisdiction because the information supporting the SAC was publicly disclosed prior to Relator filing his complaint and Relator is not an original source. Kmart's reliance on Rule 12(b)(1) is misplaced. The Seventh Circuit has made clear that § 3730(e)(4)(A) & (B) are matters of substantive law, and not an actual "jurisdictional bar" as other courts have suggested. *See United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir.2003) (citing *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 950–51, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997)); *see also U.S. ex rel. Yannacopolous v. General Dynamics*, 315 F.Supp.2d 939, 946–47 (N.D.Ill.2004). Thus, to consider evidence outside the pleadings as Kmart proposes, the Court would have to convert the motion to one for summary judgment. *Yannacopulous*, 315 F.Supp.2d at 947. Because Kmart's argument appears to be fully developed, the Court exercises its discretion and construes the motion to dismiss (as to the issue of the public disclosure bar only) as a motion for summary judgment.

Under Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing a summary judgment motion,

the district court views all facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir.2012), *citing Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir.2011). *Accord Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir.2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir.2011).

A district court's "jurisdiction" over *qui tam* actions is limited by the FCA "public disclosure" provision stating:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is the original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2006 ed.).

In pertinent part, the FCA defines "original source" as an individual "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action. . . ." 31 U.S.C. § 3730(e)(4)(B) (2006 ed.). The public disclosure bar is designed to limit " 'me too' private litigation." *United States ex rel. Goldberg v. Rush University Medical Center*, 680 F.3d 933, 934 (7th Cir.2012).

> For purposes of § 3730(e)(4), a "public disclosure" occurs when "the critical elements exposing the transaction as fraudulent are placed in the public domain." *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir.2003). Feingold explained that a public disclosure "bring[s] to the atten-

tion of the relevant authority that there has been a false claim against the government." *Id.* The public-disclosure bar is designed to prevent lawsuits by private citizens in such situations because" [w]here a public disclosure has occurred, that authority is already in a position to vindicate society's interests, and a qui tam action would serve no purpose." *Id.*

*Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 913 (7th Cir.2009).

Kmart asserts that Relator's new allegations added to his complaint through amendment (namely, TriCare, Reverse FCA (§ 3729(a)(7)), and claims arising under Fraud Enforcement and Recovery Act) are based on occurrences that were publicly disclosed in *United States ex. Rel. Yarberry v. Sears Holdings Corp.,* No. 09–cv–0588 (S.D. Ill. Filed July 31, 2009). Kmart asserts that the *Yarberry* case was unsealed on November 7, 2011, and thus the public disclosure bar has been triggered. Relator counters that such allegations are not new claims, but instead new theories of recovery relating to the "usual and customary" price fraud claims, and Relator was actually the first one to disclose these "usual and customary" price fraud claims.

Relator specifically asserts that his amended allegations (tying in FERA, Tri-Care and Reverse FCA claims) are simply iterations of the single underlying claim that he has alleged from the start. For example, Relator alleges that his reverse false claim pursuant to § 3729(a)(7), only details one more way in which Kmart's false claims caused loss to the Government (through Medicaid agencies, Plan Sponsors and PBMs unwittingly avoiding paying money back to the Government during the year-end reconciliation because their costs are falsely inflated).

The Court agrees, finding that Kmart is too narrowly interpreting the application of the public disclosure bar under these facts. Section 3730(e)(4)(a) denies jurisdiction in *qui tam* actions when publicly disclosed allegations or transactions form the basis for the complaint. 31 U.S.C. § 3730(e)(4)(a) (2006 ed.). An allegation "connotes a conclusory statement implying the existence of provable supporting facts." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 653–54 (D.C.Cir.1994). Further, for public disclosure to exist, the allegations need not mirror each other. *See United States ex rel. McKenzie v. Bell-South Telecomm., Inc.,* 123 F.3d 935, 937 (6th Cir.1997) (although the lawsuits and the publicity did not exactly mirror McKenzie's complaint, the Court agreed that the allegations were publicly disclosed prior to the filing of the suit.). This language implicates a broader application of the public disclosure bar.

Here, the specific fraud alleged by Relator in its original July 2008 Complaint was that Kmart misrepresented its usual and customary drug prices on standardized claim forms and thus overcharged private insurers, prescription benefit managers, state Medicaid programs, and certain federal programs for certain generic drugs sold at retail. In *Yarberry,* his First Amended Complaint *also* contained allegations of usual and customary price fraud claims for certain generic drugs similar to those alleged by Relator Garbe, including allegations with respect to certain federal programs including TriCare (*See* Case No. 09–cv–588, Doc. 26). Relator Garbe's case was first unsealed in September of 2010. Relator Yarberry's case was unsealed in November of 2011. On November 17, 2012, Relator Garbe amended his complaint a second time to reference additional provisions of the Act, including FERA and the reverse False Claims Act, and also

included claims involving Tricare. Notably, Relator Yarberry's allegations were later voluntarily dismissed pursuant to 31 U.S.C. § 3730(b)(5) because these claims were already made in this case, which predated the *Yarberry* action (*See* Case No. 09–cv–588, Doc. 72, p. 2) ("[T]he Court agrees that the 'usual and customary' price fraud claims are properly dismissed because ... no one other than the government may bring a related action based on the facts of the underlying pending action, and *United States ex rel. Garbe v. Kmart Corp.*, No. 08–CV–4669 (C.D.Cal. Jul. 15, 2008), is just such a case, predating this *qui tam* action.").

It is apparent to the Court that first person to disclose this fraud was Relator Garbe when his case was unsealed on September 2010. To accept Kmart's argument that Yarberry was the first to disclose this fraud with his more detailed allegations, would allow potential *qui tam* plaintiff's to avoid the public disclosure bar by pleading their complaints with more and more detailed factual allegations slightly different from more general allegations already publicly disclosed. Given that the purpose of the *qui tam* action is to prosecute fraud of which the Government is unaware, such a result would not advance Congress' purpose, and would only multiply the number of *qui tam* actions pursued by plaintiffs. The Court finds that Relator Garbe was the first one to disclose the "usual and customary" price fraud claims against Kmart and Relator Yarberry's specific allegations of usual and customary price fraud claims, such as those involving TriCare, do not constitute a new claim of fraud that would bar Relator Garbe under the public disclosure rule. *See, e.g. U.S., ex rel. Baker v. Community Health Systems, Inc.*, 709 F.Supp.2d 1084, 1099 (D.N.M.2010) (the public disclosure bar does not bar new allegations that add detail to a preexisting cause of action).

Instead, these amendments were a continuation of Relator Garbe's original claim. The Court finds that the public disclosure bar does not prevent Relator Garbe from asserting his claims.

Because there was no public disclosure for purposes of Section 3730(e)(4)(A), whether Relator qualifies as an original source is irrelevant. *See* 31 U.S.C. § 3730(e)(4)(A).

## IV. State Law Claims

Kmart argues that Relator's claims based on the false claims and related statutes of twenty-six different states that are substantively similar to and/or track the language of the FCA must likewise be dismissed for all of Kmart's above-stated reasons. Because Kmart's arguments as to the state claims mirror those above, they are denied for the reasons stated above.

### Conclusion

For the foregoing reasons, the Court **DENIES** Kmart's motion to dismiss and motion for summary judgment (Doc. 102). IT IS SO ORDERED.