UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted March 9, 2006[*]
Decided June 19, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-3696

| | |
|---|---|
| SEBRON FLOYD, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 05 C 4035 |
| FRAN ADEN, et al., *Defendants-Appellees*. | Harry D. Leinenweber, *Judge*. |

**O R D E R**

Sebron Floyd filed suit under 42 U.S.C. § 1983 against a variety of administrators and a doctor at the facility where he is confined, asserting that they violated his Eighth Amendment rights against cruel and unusual punishment through their inadequate treatment of his ankle injury.  The district court determined that he had not alleged facts showing that the defendants were

---

[*] On January 23, 2006, this court granted the appellees' motion for an order of noninvolvement due to lack of service of process in the district court. After an examination of the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R. App. P. 34(a)(2).

deliberately indifferent to his medical needs, and dismissed the suit. Because Floyd's pleadings were sufficient to state a claim, we vacate and remand for further proceedings.

The following facts are taken from Floyd's complaint, and we take them to be accurate. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). On March 18, 2005, Floyd, a detainee in the Illinois Department of Human Services' facility for sexually violent persons in Joliet, Illinois, was playing basketball in the yard when he injured his ankle. Floyd was taken to the facility's health care unit, where a doctor briefly examined him, prescribed over-the-counter painkillers, and gave him a set of crutches before discharging him back to his cell. An x-ray taken the next day showed no fractures. Despite what Floyd characterized as a lack of improvement, he was again discharged back to his unit. Floyd next saw the facility's doctor on or around May 13 "because there had been no improvement." He asked for an MRI "to make sure there was nothing wrong with the tendons or ligaments," but the doctor refused. A week later Floyd's ankle was still swollen and tender, so he returned to the health care unit. He again asked for an MRI, and the doctor again refused. Throughout this period Floyd had been submitting formal grievances to the facility's director regarding his medical treatment; he also asserted that he had obtained a court order directing the facility to have him "checked out and treated by an outside doctor." On June 22 he received an MRI, which revealed that he had suffered "medial and lateral collateral ligament sprains of the ankle" as well as an "extensive bone contusion," "localized bone edema," and various other injuries.

Floyd filed suit under § 1983 against a variety of facility administrators and "Dr. Joe," presumably the facility physician who examined Floyd after his accident and initially refused to schedule an MRI. (Floyd refers to a Dr. "Jovita Anyonwu" in his brief on appeal; we assume this is the "Dr. Joe" of his complaint.) The district court ruled that none of the defendants were involved with Floyd's health care other than the doctor, and accordingly dismissed Floyd's claims against defendants Timothy Budz, the facility director, "Mr. Freeman," a "program administrator" at the facility, Carol Vance, the facility's health care administrator, and Fran Aden, a grievance examiner at the facility. As to the remaining claims against the doctor, the court held that Floyd failed to allege "facts evidencing a deliberate indifference to serious medical needs." The district court therefore dismissed the claims against the doctor pursuant to 28 U.S.C. § 1915(e)(2) for "failure to state a claim upon which relief may be granted."

This court reviews a dismissal for failure to state a claim under § 1915(e)(2) *de novo*, accepts the facts alleged in the complaint as true, and draws all inferences in the appellant's favor. *See DeWalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). The district court here held that Floyd's complaint did not assert that any medical personnel made any decision that was "such a substantial departure from accepted

professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment," and that he had thus failed to state a claim upon which relief could be granted. But "a plaintiff need not plead particular legal theories or particular facts in order to state a claim" for the purposes of § 1915(e)(2). *DeWalt*, 224 F.3d at 612. Under notice pleading standards, Floyd was required only to specify "the bare minimum facts necessary to put the defendant[s] on notice of the claim so that [they] can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Floyd alleged in his complaint that the facility's medical personnel refused to send him for an MRI even though his condition failed to improve. We can hypothesize a set of facts consistent with this allegation that would state a claim for deliberate indifference and therefore be actionable under § 1983. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The district court dismissed Floyd's complaint prematurely.

Accordingly, we VACATE the dismissal of Floyd's claims and REMAND for further proceedings.

MANION, *Circuit Judge*, concurring. The court vacates the dismissal of Floyd's claims and remands for further proceedings, concluding that it is possible to hypothesize a set of facts that would show deliberate indifference. The court, however, does not explain what additional facts could establish deliberate indifference and still be consistent with Floyd's allegations. Floyd's allegations, in near total, indicate that, at most, Dr. Anyonwu was negligent. One alleged fact, however, could possibly support a claim that Dr. Anyonwu was deliberately indifferent. Floyd asserts that he (Floyd) obtained a court order mandating medical treatment, but that the prison did not send him out for an MRI for another month. If, in fact, Floyd obtained a state court order for an MRI and Dr. Anyonwu unreasonably waited a month to comply, that could prove that he knew of but disregarded the order and acted with deliberate indifference.

The same hypothesis could apply to the various administrators Floyd sued. The district court dismissed Floyd's complaint against those defendants because Floyd failed to allege that they caused or participated in the alleged constitutional deprivation. To be sure, "[a] non-medical prison official, . . . cannot be held deliberately indifferent simply because he failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006). However, if Floyd obtained a court order requiring the prison to arrange an MRI, the administrators' failure to comply could tie them to the alleged constitutional deprivation. Floyd has a long way to go, but at this very early stage of the proceeding, I concur with the court's remand order.