In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3082

VERONICA VINCENT,

*Plaintiff-Appellant,*

*v.*

CITY COLLEGES OF CHICAGO, EZEKIEL
MORRIS, and CHICAGO ASSOCIATION
OF REALTORS, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 7641—**Harry D. Leinenweber**, *Judge.*

SUBMITTED MARCH 29, 2007—DECIDED APRIL 30, 2007

Before EASTERBROOK, *Chief Judge*, and FLAUM and
EVANS, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Veronica Vincent wrote
*Smart Foreclosure Buying* and has registered her copy-
right in that work, which the Chicago Association of
REALTORS® published through its educational arm the
Real Estate Education Company. (The Real Estate Educa-
tion Company has since been consolidated with the
Chicago REALTORS® Real Estate School; for simplicity
we use "the Association" to refer to the Chicago Associa-
tion of REALTORS® and all of its affiliates.) The Associa-

tion promised to pay Vincent 15% of the book's selling price. Vincent used the book as the text in a class she taught at the City Colleges of Chicago. The course title was the same as the book's.

In 1995 Vincent stopped teaching this class. The City Colleges continued to offer a course with the same title, taught by Ezekiel Morris—though a prospective student might have thought that Vincent was the instructor, as her initials appeared next to the course description in the college catalog. In 2001 Vincent told the Association by phone, fax, and letter to stop publishing her book. The Association promptly stopped paying her royalties, but it did not stop printing and selling copies of the book. Vincent also asked the City Colleges to stop offering any course using her book, or at least to cease using the book's title as the name of the course. When Vincent discovered that the Association was continuing to print the book for use not only in the college courses but also in a self-directed educational program it offers for real estate brokers, she demanded that the Association pay her a portion of the revenue from these endeavors; it refused but did remit several years' back royalties.

According to Vincent's complaint, from which this narration has been drawn, the Association, the City Colleges, and Morris have violated the federal copyright and trademark laws. Vincent's complaint named "Harold Washington College" and "Wilbur Wright College" as defendants, but these are just parts of the City Colleges' operations. One could not sue Harvard College, as opposed to the larger institution (Harvard University) of which it is a component. Cf. *Schiavone v. Fortune*, 477 U.S. 21 (1986). But the City Colleges received the papers and responded to the complaint, so we have reformed the caption. (It is unclear whether the City Colleges or its governing body the Board of Trustees of Community College District No. 508 is the real party in interest;

nothing turns on the answer, so we do not pursue it.) Vincent also named the City of Chicago as a defendant but never served the City with process; it has been dismissed as a party, and that decision does not require further discussion. Quite apart from the lack of service, the City of Chicago has nothing to do with the events of which Vincent complains.

The district court dismissed most of the complaint under Fed. R. Civ. P. 12(b)(6). The complaint is fatally deficient, the judge wrote, because it does not plead facts that show an entitlement to relief. 2005 U.S. Dist. LEXIS 42963 (N.D. Ill. Apr. 6, 2005). The only well-pleaded claim, the district court concluded, is Vincent's contention that the Association violated the copyright laws by printing copies of her book after she withdrew consent. With respect to that claim, the district court later granted summary judgment in the Association's favor, ruling that Vincent had failed to establish that the Association received written notice of her decision. 2006 U.S. Dist. LEXIS 44737 (N.D. Ill. June 15, 2006).

The district judge faulted Vincent for failing to demonstrate beyond peradventure that the Association had received written notice. But why must notice be in writing? The license to print the book was oral; an oral contract may be modified or terminated orally. Nothing in the Copyright Act requires all transactions to be written—if it did, then the Association would not have had authority to publish the book in the first place! Because there are no distinctive federal rules for how parties reach contracts concerning copyrights, see *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964) (Friendly, J.), oral licenses and oral terminations are valid to the extent allowed by state statutes of frauds. The Association does not contend that an oral termination of an oral license is invalid as a matter of Illinois contract law, which governs here. And although the Association insists that one term of the

oral contract was that termination would be in writing, that contention is itself contested.

A dispute about whether the Association received written notice would preclude summary judgment even if a writing were essential. Vincent provided evidence that she mailed the Association a letter of termination. The Association denies receiving this letter, which was sent to its old offices: the Association had moved without notifying Vincent. But the Postal Service forwards letters for one year after a move and should have forwarded this one. (The Association moved in September 2001; Vincent maintains that she mailed her letter that December; the Association does not contend that it failed to provide the Postal Service with a forwarding address.) Vincent maintains that the letter did not come back to her, as it should have done if the Postal Service could not deliver it. Maybe the letter arrived but was misfiled, or maybe someone at the Association threw it away because it did not correspond to a written contract in the Association's files.

Evidence of mailing is evidence of delivery. See *Hagner v. United States*, 285 U.S. 427 (1932); *Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25 (1891). Although almost any evidence may be refuted, the trier of fact determines whether the presumption of delivery has been overcome. Certainly a jury could infer that the Association received *some* notice; why else did it stop remitting royalties? If the Association were utterly in the dark, as it purports to have been, then it would have continued paying Vincent.

That's not all. Vincent testified by deposition that she sent the Association a termination notice by fax. The Association asserts that its old fax machine had been disconnected as part of the move, but that just sets up another factual dispute. Vincent testified that the fax went through (senders can tell the difference between

reaching a fax machine and reaching a disconnected line). Fax and phone numbers usually are changed at the same time, or not at all, when a business moves. A new machine at the old number would have received the fax. The Association kept its old numbers for voice lines (the move of about five city blocks did not affect the area code), and Vincent was able to leave a termination message on its voice-mail system; a trier of fact could conclude that the fax number carried over too. Proof from the phone company's records that the fax number was out of service could be deemed incontrovertible, but all the Association offered was its say-so.

Summary judgment on the copyright claim was proper, however, with respect to Morris and the City Colleges. Vincent appears to believe that a copyright entitles the author to determine how a work is used and thus to prevent the book's adoption as a teaching text. Not at all. An author has the exclusive right to control *copying*, but once a given copy has been sold its owner may do with it as he pleases (provided that he does not create another copy or a derivative work). See *Quality King Distributors, Inc. v. L'anza Research International, Inc.*, 523 U.S. 135 (1998) (discussing 17 U.S.C. §109(a) and the first-sale doctrine). When *Smart Foreclosure Buying* is out of print, students may read it in the library or buy used copies from those who took the class in earlier years. Authors capitalize on the durability of the printed word not by charging for each extra person's use but by setting a price for new copies that reflects the work's value to multiple readers. See Stanley M. Besen & Sheila N. Kirby, *Private Copying, Appropriability & Optimal Copyright Royalties*, 32 J.L. & Econ. 255 (1989).

As for the rest of the case: a judicial order dismissing a complaint because the plaintiff did not plead facts has a short half-life. "Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for

summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b)." *Kolupa v. Roselle Park District*, 438 F.3d 713, 715 (7th Cir. 2006). Civil Rule 8 calls for a short and plain statement; the plaintiff pleads claims, not facts or legal theories. See *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992). Factual detail comes later—perhaps in response to a motion for a more definite statement, see Fed. R. Civ. P. 12(e), perhaps in response to a motion for summary judgment. Until then, the possibility that facts to be adduced later, and consistent with the complaint, could prove the claim, is enough for the litigation to move forward. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Hishon v. King & Spalding*, 467 U.S. 69 (1984).

Facts that substantiate the claim ultimately must be put into evidence, but the rule "plaintiff needs to prove Fact Y" does not imply "plaintiff must allege Fact Y at the outset." That's the difference between fact pleading (which the courts of Illinois use) and claim pleading under Rule 8. See, e.g., *Christensen v. Boone County*, No. 04-4162 (7th Cir. Mar. 21, 2007), slip op. 18-19; *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006); *Simpson v. Nickel*, 450 F.3d 303, 305-06 (7th Cir. 2006); *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 277 (7th Cir. 2003); *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Rule 8 was adopted in 1938, and *Conley v. Gibson*, 355 U.S. 41 (1957), stressed that it does not require fact pleading. It is disappointing to see a federal district judge dismiss a complaint for failure to adhere to a fact-pleading model that federal practice abrogated almost 70 years ago. As citations in the preceding paragraphs show, however, this is among many similar dispositions that the Supreme Court and this court have encountered recently

and been obliged to reverse.[†] Although we appreciate the pressure that a heavy flux of litigation creates, and the temptation to get rid at the earliest opportunity of claims that do not seem likely to pan out, Rule 12(b)(6) does not serve this function. Sometimes a feeble complaint may be dismissed on the pleadings under Rule 12(c), and judges should remember that it is possible to grant summary judgment under Rule 56 in advance of discovery. Dismissal under Rule 12(b)(6) is reserved for complaints that do not state legally cognizable claims, including the situation in which the plaintiff pleads himself out of court by making allegations sufficient to defeat the suit. But Vincent did not plead too much, to her own detriment, nor did she omit anything on the list in Rule 9(b).

"Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain. . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?"

---

[†]  This court has issued at least 12 opinions or orders during the last year alone reversing decisions that had dismissed complaints for failure to plead facts. *Christensen v. Boone County*, 2007 U.S. App. LEXIS 6451 *27-29 (7th Cir. Mar. 21, 2007); *Miller v. Fisher*, 2007 U.S. App. LEXIS 5982 (7th Cir. Mar. 12, 2007) (nonprecedential disposition); *Edwards v. Snyder*, 478 F.3d 827 (7th Cir. 2007); *Thomas v. Kalu*, 2007 U.S. App. LEXIS 4280 (7th Cir. Feb. 27, 2007) (nonprecedential disposition); *Argonaut Insurance Co. v. Broadspire Services, Inc.*, 2006 U.S. App. LEXIS 31209 (7th Cir. Dec. 18, 2006) (unpublished order); *Tompkins v. The Women's Community, Inc.*, 203 Fed. Appx. 743 (7th Cir. 2006) (unpublished order); *McCann v. Neilsen*, 466 F.3d 619 (7th Cir. 2006); *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006); *Pratt v. Tarr*, 464 F.3d 730 (7th Cir. 2006); *Floyd v. Aden*, 184 Fed. Appx. 575 (7th Cir. 2006) (unpublished order); *Simpson v. Nickel*, 450 F.3d 303 (7th Cir. 2006); *Marshall v. Knight,* 445 F.3d 965 (7th Cir. 2006).

*Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). That question should have been asked in this case but wasn't. Take, for example, Vincent's contention that "Smart Foreclosure Buying" is a service mark, so that only she may teach a course under that banner. The district judge found the complaint defective because it "failed to state [Vincent's] registered U.S. Patent and Trademark number or provide any [similar] information". What rule requires that information to be in a complaint? None that we know of. If registration is essential to prevail, then Vincent must prove it eventually, but it need not be alleged; only the *claim*—which is to say, enough to alert the defendant to the nature of the grievance—need be pleaded.

What's more, trade and service marks are protected whether or not they are registered. See *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Because the phrase "Smart Foreclosure Buying" is descriptive, it cannot be protected under trademark law without proof that consumers associate its use with the plaintiff's product. In trademark parlance, this is called "secondary meaning." See, e.g., *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481 (7th Cir. 2007) (discussing authority). See also, e.g., *Herbko International, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 n.2 (Fed. Cir. 2002) (applying this approach to a book title that was said to do double duty as a service mark for a product related to the book). Defendants do not contend that they, rather than Vincent, own the intellectual property in the phrase "Smart Foreclosure Buying" as applied to a course of instruction. The chance that Vincent will succeed in establishing secondary meaning may be slim, but her complaint does not concede the point or demonstrate that proof is impossible, and the pleading therefore cannot be dismissed under Rule 12(b)(6).

Vincent's remaining claims stem from the initials "V.V." that the City Colleges continued to append to the course description after Vincent was no longer the instructor. She characterizes this as false advertising, fraud, a deceptive business practice, and other state-law theories. Because each of these theories entails deceit, there is at least some potential for invoking the specificity requirement of Fed. R. Civ. P. 9(b). Neither the district court nor defendants relies on that rule, however, likely because the complaint alleges precisely the statement—the use of plaintiff's initials—that is asserted to be false, and the exact reason—that no one answering to the initials "V.V." taught the class after plaintiff stopped doing so—why the statement was false. The complaint does not go into detail about the intent with which the defendants applied these initials, but Rule 9(b) provides that states of mind may be alleged generally. The complaint is sufficient.

None of the defendants maintains that students are the only persons injured by this falsehood. Just about all the defendants say in this court is that one particular theory, which relies on the Illinois version of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, is no longer tenable because that statute authorizes only prospective relief, and none of the defendants today offers or teaches a class under the name "Smart Foreclosure Buying" or the initials "V.V." This must be an argument that a claim for prospective relief is moot, although the defendants do not use that word. No matter what the argument is called, however, it is not a sufficient reason to dismiss the complaint. Voluntary cessation of unlawful activity does not moot every request for prospective relief; the court must decide whether the complained-of conduct may be resumed. See *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953); *United States v. Raymond*, 228 F.3d 804, 813-15 (7th Cir. 2000). It is not possible to determine on the complaint's allegations whether recurrence is sufficiently

likely to justify prospective relief. Vincent's other state-law theories, which could lead to damages, would survive even if the court ultimately concludes that recurrence is very unlikely. (Defendants also maintain that the complaint is deficient because Vincent did not attach copies of the college catalog with the "V.V." initials, but this is a demand that complaints *prove*, as well as allege, facts; that confuses Rule 12(b)(6) with Rule 56.)

The order dismissing the City of Chicago for lack of service (and thus absence of personal jurisdiction) is affirmed. The judgment with respect to the other defendants is affirmed to the extent that Morris and the City Colleges prevailed on the copyright claim. The remainder of the judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*