In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 14-2804

UNITED STATES OF AMERICA and the
STATE OF WISCONSIN, *ex rel.*
ROSE PRESSER,

*Plaintiff-Appellant,*

*v.*

ACACIA MENTAL HEALTH CLINIC, LLC,
and ABE FREUND,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-00071-JPS — **J.P. Stadtmueller**, *Judge.*

_____

ARGUED APRIL 6, 2016 — DECIDED SEPTEMBER 1, 2016

_____

Before FLAUM, RIPPLE, and HAMILTON, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Relator and plaintiff Rose Presser
filed a qui tam action under the False Claims Act, 31 U.S.C.

§ 3729 *et seq.* ("FCA"), and its Wisconsin analog, the Wisconsin False Claims Act, Wis. Stat. § 20.931 *et seq.* ("WFCA"),[1] on behalf of the United States and the State of Wisconsin against defendants Acacia Mental Health Clinic, LLC ("Acacia") and Abe Freund, the principal owner of Acacia. Ms. Presser alleges that Acacia and Mr. Freund engaged in "upcoding," provided unnecessary medical procedures, and then charged the federal and state governments for those expenses. The district court granted the defendants' motion to dismiss the complaint for failure to state a claim of fraud with particularity as required by Federal Rule of Civil Procedure 9(b). We affirm that judgment except as it relates to the claims against both defendants regarding the use of an improper billing code. We hold that Ms. Presser has stated those allegations with sufficient particularity and therefore reverse the district court's judgment on those claims and remand for further proceedings.

# I

# BACKGROUND

**A. Facts**

Ms. Presser has twenty years of experience working as both a nurse and a nurse practitioner in the State of Wisconsin. In October 2011, Ms. Presser began working with Acacia

---

[1] On July 12, 2015, the Wisconsin legislature repealed the Wisconsin False Claims Act in its entirety. *See* 2015 Wis. Act 55, § 945n. However, under Wisconsin law, "[t]he repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof." Wis. Stat. § 990.04.

as an independent contractor nurse practitioner. She provided psychiatric evaluations, managed patient medication, and provided other medical services. In her complaint, Ms. Presser alleges that Acacia was engaged in the following practices and policies.

First, Acacia mandated that patients be assessed by a minimum of four different individuals before they were provided with medication. Patients were required to see a receptionist, a medical nurse practitioner (who could not conduct medical examinations but did provide acupuncture and similar treatments), a psychotherapist, and then a nurse practitioner. Patients incurred separate charges for each of these four steps. Ms. Presser alleges that, "[b]ased on [her] years of experience and training, Acacia's four-step policy was not medically necessary."[2]

Second, the clinic manager directed Ms. Presser to utilize American Medical Association Current Procedural Terminology code 90801 when billing her assessments. The receptionist and the medical nurse practitioner used this same billing code for their encounters with the patient. This "code is applied to … a full psychological assessment by a therapist (or therapist in training), or a psychiatric medical evaluation by a psychiatrist or psychiatric nurse practitioner, the type of assessment [Ms.] Presser was expressly told to discontinue conducting."[3] Ms. Presser asked the clinic manager why billing

---

[2] R.31 at 9 ¶ 26.

[3] *Id.* at 8 ¶ 22. Based on the complaint, it appears that the clinic manager asked Ms. Presser to discontinue these evaluations in the first two months of her employment, in order to conform to Acacia's four-step assessment

code 90801 was being used by receptionists, medical nurse practitioners, and nurse practitioners. The clinic manager shrugged his shoulders in response.

Third, patients were required to undergo a mandatory urine drug screening during each visit. Each of these screenings was billed. The clinic manager told Ms. Presser that the tests allowed Acacia to determine whether patients were taking their medication. Ms. Presser alleges, "[b]ased on her personal knowledge and experience," that "the policy made no sense as the screenings would not establish when the patients took their medications and whether they were taking them at the proper times."[4]

Fourth, both Mr. Freund and the clinic director told the clinic staff that patients were required to come to the clinic in person in order to obtain a prescription refill or to speak with a physician. Patients regularly told Ms. Presser that they had called to speak with her over the phone, but were told by the receptionist that they needed to come to Acacia in person. If a patient missed an appointment or was not seen for a period as short as thirty days, he or she was discharged and would need to restart the assessment process. Before obtaining a new prescription, patients were required to see a psychotherapist at the clinic. Patients were billed for these encounters. "Based on [Ms.] Presser's years of experience and training,"

---

procedure. *See id.* at 8 ¶ 21. However, the complaint is not entirely clear on this point.

[4] *Id.* at 10 ¶ 28.

Ms. Presser alleges that these prescription refill and appointment policies "were medically unnecessary."[5]

In her complaint, Ms. Presser provided examples of what she believed to be "unnecessary medical billings."[6] John Doe 1 and Jane Doe 2 saw Ms. Presser for treatment of anxiety disorders during Ms. Presser's previous tenure at Aurora Behavioral Health.[7] In her "clinical judgment," neither patient was an "appropriate candidate for psychotherapy."[8] Ms. Presser had similar opinions about John Doe 2 and Jane Doe 1, whom she also saw for medication.[9] The clinic manager and Mr. Freund nonetheless directed that all four individuals undergo the assessment process established by Acacia, which included psychotherapy.

Before Ms. Presser began working at Acacia, Mr. Freund told her "that Acacia could take all insurance."[10] Mr. "Freund also told [Ms.] Presser that almost all of Acacia's patients were

---

[5] *Id.* at 12 ¶ 39.

[6] *Id.* at 13 ¶ 42.

[7] Due to the Privacy Rule established in the Health Insurance Portability and Accountability Act of 1996, the patients' identities are undisclosed. *See id.*

[8] *Id.* at 13–15 ¶¶ 43, 46.

[9] The amended complaint does not specify whether John Doe 2 or Jane Doe 1 were prior patients at Aurora Behavioral Health or were seen for the first time at Acacia.

[10] *Id.* at 17 ¶ 55.

'on Title 19.'"[11] According to the amended complaint:

> Based on those discussions, as well as her experience at other clinics, she knew that Acacia submitted bills to individual patients, to private insurers, and to Medicare and Medicaid programs run by the United States and the State of Wisconsin for services provided to patients, subject to their individual circumstances. She also knew those bills were based on services provided to patients, as coded by Acacia staff, in accordance with Acacia's mandatory policies and procedures discussed above.[12]

Ms. Presser calculated what she believed to be the appropriate annual revenue for Acacia, "[b]ased on her experience and her knowledge of the patient volume and activity at Acacia."[13] Actual revenue for 2011 was double Ms. Presser's calculation.

Ms. Presser and other clinicians questioned the efficacy of the aforementioned procedures, but the clinic director told them that "[t]his is how Abe [Freund] wants it."[14] When Ms. Presser sent emails that questioned procedures, Mr. Freund would respond, even when those emails were not addressed to him. He also had cameras in the office and could

---

[11] *Id.* at 17 ¶ 57.

[12] *Id.* at 18 ¶ 59.

[13] *Id.* at 19 ¶ 62.

[14] *Id.* at 6 ¶ 14; *see also id.* at 15 ¶ 48.

monitor the treatment being provided. According to the complaint, he therefore "knew that Acacia was billing Medicare and Medicaid for all services provided by the staff at Acacia, including services that Acacia's clinical staff told him were not medically necessary or contrary to protocols and procedures established by Medicare and/or Medicaid."[15] He nevertheless continued to direct staff to comply with these policies.

## B. Earlier Proceedings

Ms. Presser filed a qui tam complaint on January 18, 2013, under the FCA and the WFCA on behalf of the United States and the State of Wisconsin against Acacia and Mr. Freund. She alleged that they had submitted fraudulent medical bills to the federal and state governments for payment.[16]

Acacia and Mr. Freund moved to dismiss the complaint on December 18, 2013, contending that Ms. Presser had not pleaded a single claim with sufficient particularity. Ms. Presser then moved to amend her complaint. The district court granted that motion and ordered Ms. Presser to "mak[e] any and all improvements she deems appropriate; no further

---

[15] *Id.* at 16 ¶ 52; *see also id.* at 17 ¶ 57 (telling Ms. Presser that patients were on Title 19).

[16] Ms. Presser also presented a conspiracy claim, a common law claim of payment under mistake of fact, and a common law claim of unjust enrichment. The district court dismissed those claims, and Ms. Presser does not appeal their dismissal.

leave to amend will be granted."[17] Ms. Presser subsequently filed an amended complaint.

Acacia and Mr. Freund moved to dismiss the amended complaint on April 11, 2014. They contended that Ms. Presser had failed to plead the FCA and WFCA claims with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b), and had failed to state any claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the defendants' motion on July 15, 2014. The court noted that Ms. Presser had "fail[ed] to identify with specificity *to whom* bills for Acacia's services were allegedly presented."[18] The court also held that, at most, the complaint discussed how Acacia submitted bills to patients, insurers, and Medicaid programs "subject to their individual circumstances."[19] In the view of the court, Ms. "Presser does not even definitively *allege* that at least one patient's bill was submitted to the United States or the State of Wisconsin."[20] The district court concluded that none of Ms. Presser's claims could survive a motion to dismiss.

---

[17] R.30 at 2 (emphasis omitted). In the view of the district court, Ms. Presser cited a provision of the FCA which did "not provide for liability." *Id.* at 1. It stated that, absent an amendment, it therefore "would be obliged to dismiss this case for failure to state a claim." *Id.* Although the district court only referenced this supposed jurisdictional defect as the basis for its order, it did state that Ms. Presser should make all appropriate improvements to her complaint. *Id.* at 1–2.

[18] R.40 at 7 (emphasis in original).

[19] *Id.* (emphasis omitted) (quoting R.31 at ¶¶ 59–60).

[20] *Id.* at 7–8 (emphasis in original).

The court also declined to grant Ms. Presser leave to amend her complaint. It noted that Ms. Presser already had been given the opportunity to file an amended complaint and concluded that the defendants would be prejudiced by the unresolved allegations of fraud. Ms. Presser now timely appeals.

## II

### DISCUSSION

"The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Gross v. AIDS Research All.-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). We review de novo a district court's decision to dismiss a complaint for failing to satisfy the requirements of Rule 9(b). *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).[21]

Drawing on the Supreme Court's holdings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), we have made clear that the pleading standards under Rule 8 and Rule 9 remain distinct. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014). Under Rule 8, a plaintiff only needs to "give enough details about the subject-matter of the case to present a story that

---

[21] We also review de novo a decision to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). *O'Gorman v. City of Chi.*, 777 F.3d 885, 888 (7th Cir. 2015). However, a complaint that satisfies the heightened pleading standards of Rule 9(b) necessarily satisfies the pleading standards of Rule 12(b)(6). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014).

holds together." *Swanson*, 614 F.3d at 404. Alternatively, under Rule 9(b), a plaintiff "alleging fraud or mistake … must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (internal quotation marks omitted).

While applying this shorthand to describe the requirements of Rule 9, we also have warned that "courts and litigants often erroneously take an overly rigid view of the formulation" and that the precise details that must be included in a complaint "may vary on the facts of a given case." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).[22] Nevertheless, plaintiffs must "use some … means of injecting precision and some measure of substantiation into their allegations of fraud." 2 James Wm. Moore et al., Moore's Federal Practice § 9.03[1][b], at 9-22 (3d ed. 2015); *see also Pirelli*, 631 F.3d at 442.

Rule 9 requires heightened pleading standards because of the stigmatic injury that potentially results from allegations of fraud. *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). "[A] public accusation of fraud can do great damage to a firm before the firm is (if the accusation [is] prove[d] baseless) exonerated in litigation … ." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,

---

[22] *See also Anchor Bank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *Vincent v. City Colls. of Chi.*, 485 F.3d 919, 923 (7th Cir. 2007); *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).

772 F.3d 1102, 1105 (7th Cir. 2014). We have observed, more-over, that "fraud is frequently charged irresponsibly by peo-ple who have suffered a loss and want to find someone to blame for it." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). If discovery is allowed to proceed, a de-fendant well may face a long period of time where it stands accused of fraud,

> placing what may be undue pressure on the de-fendant to settle the case in order to lift the cloud on its reputation. The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless. It also forces the plain-tiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims.

*Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (discussing the Rule's purpose of "minimizing 'strike suits' and 'fishing expeditions'"); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) ("Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations … .").

## A.

We have applied the requirements of Rule 9(b) in the past, and that experience provides useful guideposts for our as-

sessment of this case. We begin by focusing on the requirements of the FCA. Our court summarized them in *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818 (7th Cir. 2011):

> The False Claims Act makes it unlawful to knowingly (1) present or cause to be presented to the United States a false or fraudulent claim for payment or approval, 31 U.S.C. § 3729(a)(1) (2006); (2) make or use a false record or statement material to a false or fraudulent claim, § 3729(a)(1)(B); or (3) use a false record or statement to conceal or decrease an obligation to pay money to the United States, § 3729(a)(7) (2006). Under the Act, private individuals … , referred to as "relators," may file civil actions known as *qui tam* actions on behalf of the United States to recover money that the government paid as a result of conduct forbidden under the Act. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 912 (7th Cir. 2009). As an incentive to bring suit, a prevailing relator may collect a substantial percentage of any funds recovered for the benefit of the government. *Id.* To establish civil liability under the False Claims Act, a relator generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false. *E.g., United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir. 2005).

*Id.* at 822 (footnote omitted).[23] The WFCA similarly requires a relator to show these elements. *See* Wis. Stat. § 20.931(2)(a) (a person is liable who "[k]nowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance"); *id.* § 20.931(2)(b) (a person is liable who "[k]nowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance").

## 1.

We first consider whether the complaint states, with sufficient particularity, that Acacia and Mr. Freund made the alleged claims and statements to the federal and state governments. The defendants contend, and the district court held, that Ms. Presser had not alleged that the defendants actually sent any of the alleged claims or made any of the alleged statements to the state or federal governments.

Our case law establishes that a plaintiff does not need to present, or even include allegations about, a specific document or bill that the defendants submitted to the Government. In *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), for example, an engineer alleged that his employer knowingly certified engine parts that did not meet the specifications prescribed by the Government. *Id.* at 853–54. The engineer's complaint described the parts that were shipped to the Government, noted that a contract *required* his

---

[23] In enacting the FCA, Congress sought "to encourage any individual knowing of Government fraud to bring that information forward." S. Rep. No. 99–345, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266–67.

employer to certify the parts in order to receive payment, and stated that payment was received. *Id.* at 853. However, the engineer did not provide an invoice showing a specific request for payment. *Id.* at 854. We held, nonetheless, that it was reasonably understood from the complaint that the employer had submitted a certificate containing false statements in asking for payment. *Id.* (noting that it was "possible that military procurement officers accepted and paid for the turbine blades without this certificate" but that the possibility was "remote"). In a similar case, we held that an employee of an educational training institution adequately pleaded fraud by alleging that the institution failed to comply with federal law, received funding, and "could only have received federal funding by certifying compliance" with federal law. *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 839 (7th Cir. 2013). In each of these cases, the alleged facts necessarily led one to the conclusion that the defendant had presented claims to the Government.

Here, Ms. Presser stated in her complaint that Mr. Freund had told her "that almost all of Acacia's patients were 'on Title 19'" and that they dealt with Medicare.[24] Ms. Presser's complaint also makes clear that the questionable practices and procedures were applied to all patients at the clinic. Considering Ms. Presser's position as a nurse practitioner, a position that does not appear to include regular access to medical bills, we do not see how she would have been able to plead more facts pertaining to the billing process. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ("[T]he particularity requirement of Rule 9(b) must be relaxed where the

---

[24] R.31 at 17 ¶¶ 57–58.

plaintiff lacks access to all facts necessary to detail [her] claim."). Therefore, "[f]or now, an inference is enough." *Leveski*, 719 F.3d at 839. We hold, consistent with *Lusby* and *Leveski*, that Ms. Presser has alleged adequately that Acacia billed Medicare for services that were provided pursuant to the challenged policies and procedures.

**2.**

We now must consider whether the policies and practices alleged in Ms. Presser's complaint describe the alleged fraudulent activity in sufficient detail. Although a pleading need not "exclude all possibility of honesty in order to give the particulars of fraud," *Lusby*, 570 F.3d at 854, "[t]he grounds for the plaintiff's suspicions must make the allegations *plausible,* even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Pirelli*, 631 F.3d at 443 (emphasis in original).

We begin with the allegations related to the use of billing code 90801. According to the complaint, this code is only meant to apply to full psychological assessments by a therapist or an evaluation by a psychiatrist. Ms. Presser alleges that her superiors directed her to use this code even though they also "expressly told [her] to discontinue conducting" psychiatric evaluations.[25] She also alleges that receptionists and medical nurse practitioners used this code, even though their job description clearly does not include psychological assessments. The clinic director indicated to Ms. Presser that the use of this specific code was the policy and that Mr. Freund

---

[25] *Id.* at 8 ¶ 22.

wanted these policies in place. Acacia mandated that all patients be assessed by a receptionist, nurse practitioner, and medical nurse practitioner, and each of these encounters were billed separately. These allegations state clearly and specifically that Acacia provided non-psychiatric evaluations and then falsely presented those services as psychiatric evaluations on bills to the state and federal governments.

Indeed, the allegations involving this billing code are even more specific than those presented in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). In *Universal Health Services*, a relator alleged that the owner of a mental health facility had employed mental health counselors who lacked the requisite licensing. *Id.* at 1997. The facility submitted reimbursement claims to Medicaid using payment codes "such as 'Individual Therapy' and 'family therapy.'" *Id.* The Supreme Court concluded that, "by submitting claims for payment using payment codes that corresponded to specific counseling services, [the owner of the facility] represented that it had provided individual therapy, family therapy, preventive medication counseling, and other types of treatment." *Id.* at 2000. The Court held that the use of these codes "without disclosing [the] many violations of basic staff and licensing requirements for mental health facilities … constituted misrepresentations" that could serve as a basis for liability under the FCA. *Id.* at 2000–01.[26] Ms. Presser's allegations involve more than the "misleading half-truths" that the Court identified in *Universal Health Services*. *Id.* at 2001. In that case, the

---

[26] The Supreme Court remanded the case to determine whether this misrepresentation was sufficiently "material." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002–04 (2016).

defendant allegedly billed Medicaid for the correct type of therapy but failed to note that the therapy was provided by an unqualified individual. *Id.* at 1999. Here, Acacia and Mr. Freund allegedly billed Medicaid *for a completely different treatment*. The claim therefore does not involve a misrepresentation by omission; it involves an express false statement. Ms. Presser's complaint sufficiently alleges that the defendants misused a billing code and falsely represented to the state and federal governments that a certain treatment was given by certain medical staff when in fact it was not.

By contrast, Ms. Presser's remaining allegations present significant cause for concern. Ms. Presser challenges the propriety of the four-person evaluation process, mandatory drug screenings, and policies on prescription refills and appointments. She claims that these policies violate 42 U.S.C. § 1395y(a)(1)(A), which states that the Medicare program will not provide reimbursement for services which "are not reasonable and necessary for the diagnosis or treatment of illness or injury."[27]

However, in her complaint, Ms. Presser provides no medical, technical, or scientific context which would enable a reader of the complaint to understand why Acacia's alleged actions amount to unnecessary care forbidden by the statute. For instance, the complaint does not reference policies or practices at other medical clinics, regulations, or other publications which call Acacia's policies into question. Further, although the complaint identifies four individuals who received treatment at Acacia that was, in Ms. Presser's view, medically unnecessary, the complaint does not provide any reasons *why*

---

[27] *See* R.31 at 21 ¶ 72.

these treatments actually were unnecessary other than
Ms. Presser's personal view.

We previously have affirmed dismissals of complaints
that fail to put the defendant's alleged activity into its relevant
context. In *Pirelli Armstrong Tire Corp. Retiree Medical Benefits
Trust v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011), for example,
we considered a complaint which alleged that a pharmacy
chain systematically filled prescriptions for one form of a
medication with a more expensive form of the same medica-
tion. *Id.* at 438. The plaintiff relied, in part, on data showing
that the chain had sought reimbursement for the more expen-
sive form of the drug eleven times. *Id.* at 444. We noted, how-
ever, that patients may have specific medical reasons that
make the more expensive form of the drug preferable to the
other form. *Id.* at 445. "[T]he data" presented in the complaint,
"untethered as they are, cannot corroborate a fraud because
their free-floating nature stymies any meaningful under-
standing of what the numbers mean." *Id.* We explained that:

> Putting the numbers in context could tell us
> whether [the plaintiff] also reimbursed [the
> pharmacy] for the *cheaper* form of the drugs in
> the five-year period that [the plaintiff] exam-
> ined. To the extent it did not, the fraud claim
> would be supported; to the extent it did, it
> would be undermined. Or we could see if reim-
> bursements for the more expensive forms of the
> drugs outstripped reimbursements for the
> cheaper versions in an unlikely way. [The plain-
> tiff] did not need to dance to [a] comprehensive
> statistical tune, but did need to provide
> firsthand facts or data to make its suspicions

> plausible. [The plaintiff's] *de minimis* showing
> tells us little and does not fulfill Rule 9(b)'s pur-
> pose of "forc[ing] the plaintiff to do more than
> the usual investigation before filing his com-
> plaint."

*Id.* (last alteration in original) (emphasis in original) (quoting
*Ackerman*, 172 F.3d at 469).

The complaint in this case similarly lacks a concrete basis
for the plaintiff's allegations. Like the complaint in *Pirelli*,
Ms. Presser's complaint fails to demonstrate how Acacia's
policies compare to other clinics or could otherwise be under-
stood as "unusual." *See id.* Acacia's policies could have en-
tirely innocent explanations. A four-step evaluation process
may be in place to ensure that patients are diagnosed properly
and receive proper treatment. Mandatory drug-screening and
in-person refill policies may ensure that prescriptions are not
being abused. Without additional context providing reason to
question the appropriateness of these policies, the complaint
does not present allegations of fraud with sufficient particu-
larity.

Not only does the lack of context make these allegations
too indefinite, but each of the allegations depends entirely on
Ms. Presser's personal estimation[28]—an estimation that is not

---

[28] *See, e.g., id.* at 9 ¶ 26 ("Based on Presser's years of experience and train-
ing, Acacia's four-step policy was not medically necessary."); *id.* at 10 ¶ 29
("Based on Presser's years of experience and training, Acacia's policy
mandating a urine drug screen each time a patient came to the clinic was
not medically necessary."); *id.* at 12 ¶ 39 ("Based on Presser's years of ex-
perience and training, Acacia's policies requiring appointments to speak
with clinicians, limiting refills without an appointment, and mandating

supported in any concrete manner. Many potential relators could claim that "in my experience, this is not the way things are done." However, relators may not be in a position to see the entire picture or may simply have a subjective disagreement with the other party on the most prudent course of action. Further, their perspective may be colored by considerable bias or self-interest, such as in the case of a disgruntled employee. The heightened possibility of mistake or bias supports the need for a higher standard of specificity for fraud compared to other civil litigation. *See, e.g., Fid. Nat'l Title Ins. Co.*, 412 F.3d at 749 (noting that Rule 9(b) "forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims"); *Ackerman*, 172 F.3d at 469 ("[F]raud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it."); *Uni\*Quality, Inc.*, 974 F.2d at 924 ("Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes."). Ms. Presser's subjective evaluation, standing alone, is not a sufficient basis for a fraud claim.

We hold that Ms. Presser sufficiently has alleged facts that constitute a fraudulent scheme involving the use of billing code 90801. However, without an ascertainable standard or more context, Ms. Presser's other allegations of fraud do not

---

psychotherapy and Medical Nurse Practitioner assessments to obtain refills of medications were medically unnecessary.").

suffice. The latter claims were properly dismissed by the district court.[29]

## B.

A party has the right to amend the complaint once as a matter of right and has the opportunity for further amendment at the district court's discretion. Fed. R. Civ. P. 15(a); *see also Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). Here, Acacia and Mr. Freund moved to dismiss Ms. Presser's initial complaint, contending in part that Ms. Presser had not pleaded a single claim with sufficient particularity. The district court granted Ms. Presser's motion for leave to amend her complaint and directed Ms. Presser to "mak[e] any and all improvements she deems appropriate; no further leave to

---

[29] Ms. Presser has pleaded adequately the element of fraudulent intent for her remaining claims. The FCA's "scienter requirement defines 'knowing' and 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'" *Universal Health Servs.*, 136 S. Ct. at 1996 (quoting 31 U.S.C. § 3729(b)(1)(A)). Unlike the other elements of an FCA claim, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 658 (7th Cir. 2015). According to the complaint, Ms. Presser was told by the clinic manager that Acacia's policy required the use of billing code 90801, and she was told that Mr. Freund endorsed this policy. One certainly could infer intent from these alleged facts. The defendants do not contend that Ms. Presser has failed to satisfy the element of intent, and we see no reason to affirm the dismissal of her complaint on these grounds.

amend will be granted."[30] When the court subsequently dismissed Ms. Presser's amended complaint, it concluded that Ms. Presser was on notice that she would not receive additional leave to amend and "that any further amendment would be unduly prejudicial to Defendants."[31]

Ms. Presser does not challenge the district court's decision not to grant further leave, and therefore this issue is waived. *See Fluker v. Cty. of Kankakee*, 741 F.3d 787, 795 (7th Cir. 2013) (holding that a party that failed to develop a legal argument on appeal regarding the district court's denial of its attempt to file a second amended complaint had waived the issue). Considering that some of her claims are proceeding to the discovery stage, the district court may choose to revisit the question of amendment because the potential for undue prejudice to Acacia and Mr. Freund that previously was identified by the district court now may be diminished. The decision whether to grant further leave to amend is entirely within the discretion of the district court.

## Conclusion

For the foregoing reasons, we affirm the district court's judgment except with respect to the claims about the use of billing code 90801. With respect to those claims, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion. Whether, under these circumstances, further amendment should be allowed, is left

---

[30] R.30 at 2 (emphasis omitted).

[31] R.40 at 10.

to the district court's discretion. The parties shall bear their own costs in this appeal.

AFFIRMED in part; REVERSED and REMANDED in part

HAMILTON, *Circuit Judge*, concurring in part and dissenting in part. I agree with my colleagues that the dismissal of Presser's claims alleging fraudulent use of billing codes must be reversed. Judge Ripple's opinion explains why Presser alleged sufficiently that the defendants presented the allegedly false claims to the federal and state governments for payment and why those allegations are sufficiently specific for purposes of Rule 9(b) regarding the improper billing codes.

However, I respectfully part company on the dismissal of Presser's other fraud claims based on the unnecessary four-person evaluation process, mandatory drug screenings, and policies on prescription refills and appointments. I would allow those claims to go forward as pleaded. In any event, the district court will need to exercise its sound discretion in deciding whether to allow further amendments to revive these other claims.

On these other claims, Presser alleged the "circumstances" of the fraud with particularity as required by Rule 9(b) by providing "the who, what, when, where, and how, the first paragraph of any newspaper story." *U.S. ex rel. Hanna v. City of Chicago*, — F.3d —, —, 2016 WL 4434559, at *3 (7th Cir. Aug. 22, 2016), quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). She has identified the defendants' practices that led to much higher billings to the government. The majority does not disagree. In addition, Presser has alleged fraudulent intent adequately as to all of her claims. The majority acknowledges as much in footnote 29, which also reminds us that Rule 9(b) allows fraudulent intent to be alleged "generally."

Yet the majority concludes on pages 17 to 20 that Presser failed to allege something else essential, apparently some additional factual basis to support her contention that these

other challenged practices are in fact fraudulent rather than innocent. That discussion is in tension with note 29 and more broadly with our case law interpreting Rule 9(b) and the ability to plead fraudulent intent generally.

The majority tells us that what is missing is "an ascertainable standard or more context," and the majority suggests that a reference to a professional standard might provide the missing allegations. Ante at 20. The majority is concerned that plaintiff has not identified anything other than her own experience and judgment as a basis for saying that defendant was billing the federal and state governments for unnecessary care. The majority also speculates about possible innocent explanations for the allegedly fraudulent practices. Ante at 19.

With respect, the majority's insistence on an external standard or "context" goes beyond the requirements of Rule 9(b). The circumstances of the alleged fraud have been alleged with particularity here. We have long rejected demands for more than the "who, what, when, where, and how" under Rule 9(b). E.g., *Hefferman v. Bass*, 467 F.3d 596, 602 (7th Cir. 2006) (reversing dismissal of fraud claim); *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005) (same); *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (affirming denial of dismissal under Rule 9(b)); *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993) (error to dismiss under Rule 9(b)); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (plaintiff need not "plead facts showing that the representation is indeed false"); accord, *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 668–69 (7th Cir. 2008) (complaint need not plead evidence of fraud). The majority

seems to demand that the relator plead evidence or in essence prove her case in the complaint.

In fact, the majority here comes close to applying the special pleading standard from the Private Securities Litigation Reform Act, which requires a securities fraud plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2); see also *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007) (explaining how PSLRA requirement for pleading fraudulent scienter goes beyond Rule 9(b)). That standard does not apply here, but by suggesting innocent explanations for the challenged practices and criticizing the relator's failure to negate them in her complaint, the majority applies something very close to the "strong inference" standard from the PSLRA.

To justify this unusually demanding interpretation of Rule 9(b), with its amorphous requirement for pleading "context," the majority highlights one of the policy concerns reflected in Rule 9(b): the danger that a defendant's reputation might be tarnished unfairly by conclusory allegations of fraud. That is one important policy at stake here, but so too are the liberal pleading policies reflected in Rules 8 and 9(b). We and other courts try to strike the right balance, guided by the rules' texts and purposes, by insisting that the "circumstances" of alleged fraud be stated with particularity while allowing general pleading of fraudulent intent. That balance does not include the majority's uncertain requirement for pleading "context" or for facts refuting the majority's suggested innocent explanations for the allegedly fraudulent practices. These additional claims may fail later on for lack of

evidence, but it seems to me, for now at least, that they have been pleaded sufficiently.

This case will return to the district court for discovery and further proceedings. It is possible the relator Presser may seek to amend her complaint to meet the newly articulated requirement for "context" or "external standards," or at least for more factual details supporting the other fraud claims. The majority says at page 22 that the decision on any further amendment of the complaint "is entirely within the discretion of the district court." It should go without saying that discretion must be exercised according to law. Rule 15(a)(2) provides that the "court should freely give leave when justice so requires." If a further amendment is sought here, the case for allowing it would be very strong because of a mistake the district court made at the outset of the case.

When the defense filed its original motion to dismiss, the district judge told the relator that she would have only one chance to amend her complaint. Such a rigid ruling at the outset of most cases would be an abuse of discretion. See *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 522 (7th Cir. 2015) (2009 amendment to Rule 15(a) "did not impose on plaintiff's choice of pleading a regime of 'one‑and‑done'"). In this case, the "one‑and‑done" ruling was an abuse of discretion since it was based on the judge's own clear legal mistake. He wrote that the complaint failed to state a claim under the False Claims Act because it asserted a claim under "31 U.S.C. § 3729(a)(2)." See *U.S ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 2014 WL 3530747, at *1 (E.D. Wis. July 15, 2014) (summarizing earlier order). The flaw that prompted the "last chance" warning, was merely a problem with a citation, which was not even necessary.

The original complaint quoted the correct language from the False Claims Act—"knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim." The problem was that the original complaint cited the pre-2009 version, 31 U.S.C. § 3729(a)(2), rather than the post-2009 version in which that same language appears in § 3729(a)(1)(B). The complaint was not required to include a legal theory, let alone a correct citation. E.g., *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005); *Bartholet v. Reishauer A.G.*, 953 F.2d 1073 (7th Cir. 1992). Such a minor citation error should not be fatal, nor should it shut the door to any further needed amendments, keeping in mind the "when justice so requires" standard of Rule 15(a)(2).

More generally, in the post-*Iqbal*-and-*Twombly* world of civil pleading, it is difficult for any plaintiff to know what a particular district judge will require by way of details in a complaint. Variations among district judges and appellate panels can be substantial, suggesting that the *Iqbal* and *Twombly* project is leading not to more clarity and less litigation, but to less clarity and more litigation. The majority acknowledges this problem, noting accurately that "the precise details that must be included in a complaint 'may vary on the facts of a given case.'" Ante at 10, quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011); accord, *In re Healthcare Compare Corp. Securities Litig.*, 75 F.3d 276, 284–85 (7th Cir. 1996) (Ripple, J., dissenting) ("Reasonable minds can—and will—differ on the adequacy of the factual specificity in an allegation of fraud."). To emphasize the uncertainty, *Pirelli* noted that the plaintiff in that case may have provided *too much* detail. 631 F.3d at 439 n.1.

Too much? Too little? More "context"? What is a plaintiff to do? The best approach is to let the plaintiff try her best, and then to be liberal in allowing amendments ("when justice so requires") once the court has indicated what is necessary. E.g., *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 519-20 (7th Cir. 2015) (reversing dismissal). We should not decide cases, or invite district judges to decide cases, based on a plaintiff's incorrect prediction about just how much detail a particular district judge or appellate panel might require. See Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Such decisions about amending pleadings are left to district judges' sound discretion, not to their whims, and certainly not to their impatience based on their own legal mistakes, as occurred in this case.